Sealed

FILED BY ____ L.C.

AUG 14 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

United States District Court
for the Southern District of Florida
Miami Division

Case No.: 1:19-mc-23253-KMW

In Re:

Application of Maigualida Naranjo
Barrios for Foreign Discovery Assistance
Pursuant to 28 U.S.C. § 1782,

      Applicant, Maigualida Naranjo
Barrios.

_____/

## Applicant's Memorandum in Support of *Ex Parte* Application for Discovery Assistance with Respect to Foreign Legal Proceedings

This memorandum is submitted by Maigualida Naranjo Barrios ("Applicant") in support of her Application for Assistance with Respect to Foreign Legal Proceedings (the "Application"), in connection with which the Applicant seeks discovery from Banesco USA ("Banesco"), SunTrust Bank, Sun Trust Banks, Inc., Miura Investment Advisors, Inc. f/k/a Multiplicas Investment Advisors, Inc. ("Miura"), Multiplicas Investments Ltd., MWM Investments Ltd. Italo D'Alfonso, Mario V. D'Alfonso, Hugo Ortega, and Mario G. Ovalles (collectively, the "Respondents") pursuant to 28 U.S.C. § 1782.

### I.    Factual Context

Applicant is a Venezuelan national involved in ongoing legal proceeding in the Bolivarian Republic of Venezuela ("Venezuela") against a Venezuelan national named Manuel Salvador Torruella Seijas ("Torruella") (the "Foreign Proceeding"). The Foreign Proceeding was initiated in 2015 by Torruella through a divorce petition against Applicant, which has generated a divorce judgment, and an ongoing collateral appellate attack against the divorce judgment. The Applicant maintains that Torruella breached his legal obligations to disclose fully all of his assets

to her and to the Venezuelan courts. Specifically, Applicant has discovered that Torruella had in 2013, and may still have, bank accounts at Banesco and SunTrust Bank, and a securities account with offshore companies that have links to Miura.

Applicant has become aware that Torruella had or has a securities account with at least two offshore companies based in Barbados, i.e., Multiplicas Investments Ltd. ("Multiplicas") and MWM Investments Ltd. ("MWM") Upon information and belief, both offshore companies have overlapping officers with Miura, a securities brokerage firm with its principal place of business in Miami-Dade County, Florida. The overlapping officers are Mario V. D'Alfonso, Italo D'Alfonso, Hugo Ortega, and Mario G. Ovalles, whom Applicant believes are Miami-based officers of Multiplicas and MWM. Applicant believes that these individual Respondents—directly and through Miura, Multiplicas, and MWM—have been involved in overseeing Torruella's assets and may have documents or other information pertaining to Torruella and or his assets in the United States.

Applicant requests that the Court provide discovery assistance in obtaining from Respondents any documents or other information in their possession or control that may have regarding Torruella and or his assets. All of Respondents reside or are found in Miami-Dade County, Florida.

## II.     Legal Discussion

### A.     Section 1782 Expressly Authorizes the Discovery Assistance Here Requested by the Applicants

Section 1782 grants United States district courts extremely broad authority to facilitate discovery in support of foreign legal proceedings against persons or entities residing or found in a particular court's district. Section 1782 embodies a longstanding congressional policy favoring the liberal grant of assistance to foreign proceedings in hopes of advancing international comity

Case No.: 1:19-mc-23253-KMW

and fostering cooperation by foreign jurisdictions with United States interests. *See, e.g., In re Bayer AG,* 146 F.3d 188, 191-192 (3rd Cir. 1998) ("[Section 1782 is] designed to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect.").[1] To that end, 28 U.S.C. § 1782 provides in pertinent part that:

> The district court of the district in which a person resides or is found *may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal* .... The order may be made ... *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the

---

[1] The Senate Report to the 1964 amendments now incorporated into § 1782 describes the purpose of the statute as follows:

> Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.
>
> It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.

S. Rep. No. 88-1580, at 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3783.

3

Case No.: 1:19-mc-23253-KMW

international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

Section 1782 assistance in the form of compelled document productions and depositions is accordingly authorized against (i) any "person" that "resides" or is "found" in the district of the court where the application is made, (ii) at the request of "any interested person", (iii) for use "in a proceeding in a foreign or international tribunal". *See* 28 U.S.C. § 1782. These requirements are here satisfied because: (i) Respondents "reside" or are "found" in this district, by maintaining offices; (ii) the Applicant is an "interested person" because she is a party to a Foreign Proceeding; and (iii) the Foreign Proceedings are pending or will soon be initiated in "foreign or international tribunals."

    **B.**    **The U.S. Supreme Court has Reaffirmed § 1782's Broad Application Through Its Opinion in *Intel Corporation v. Advanced Micro Devices, Inc.***

        **1.**    ***Intel's* Holdings**

The exceptionally broad scope of § 1782 was reaffirmed in sweeping terms by the United States Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466 (2004), where the Supreme Court:

    (i)    interpreted the "interested party" element of § 1782 to include aggrieved interests that are not even direct parties to the foreign proceeding for which discovery assistance is sought. *Id.* at 256-257 and 2479;

4

Case No.: 1:19-mc-23253-KMW

    (ii)    defined the foreign "tribunal" requirement expansively beyond judicial proceedings to include investigative, quasi-judicial, administrative, or arbitral proceedings, which need not even be pending at the time a § 1782 application is made. *Id.* at 258 and 2479; and

    (iii)    confirmed that § 1782 relief is available regardless of whether the type of discovery elicited is permissible in the foreign jurisdiction, even where the foreign tribunal in question explicitly declined to elicit discovery assistance from U.S. courts. *Id.* at 253 and 2476.

**2. Section 1782 is a Codification of a Long-Standing U.S. Public Policy of Promoting International Cooperation in Litigation**

A significant analytical basis for *Intel's* holdings is a long history of legislative efforts to facilitate U.S. assistance to foreign courts. The Supreme Court has explained that "[s]ection 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247, 124 S. Ct. at 2473. "In 1948, Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings. That legislation, codified as § 1782, eliminated the prior requirement that the government of a foreign country be a party or have an interest in the proceeding. … The next year, Congress deleted 'civil action' from § 1782's text and inserted 'judicial proceeding.'" *Id.* at 247-248 and 2473. "In 1958, prompted by the growth of international commerce, Congress created a Commission on International Rules of Judicial Procedure (Rules Commission) to 'investigate and study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving

5

improvements.' ...   Six years later, in 1964, Congress unanimously adopted legislation recommended by the Rules Commission; the legislation included a complete revision of § 1782." *Id.* at 248-249 and 2473-2474.

"As recast in 1964, § 1782 provided for assistance in obtaining documentary and other tangible evidence as well as testimony.  Notably, Congress deleted the words, 'in any judicial proceeding *pending* in any court in a foreign country,' and replaced them with the phrase 'in a proceeding in a foreign or international tribunal.'" *Intel,* 542 U.S. at 248-249, 124 S. Ct. at 2474. The *Intel* opinion notes that the Senate Report regarding the 1964 amendment "explains that Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'" *Id.* at 249 and 2474.

### 3.     *Intel's* Facts Illustrate § 1782's Extensive Scope

The Supreme Court's authorization of § 1782 assistance in *Intel* involved a fairly extreme set of circumstances that highlight the broad availability of discovery assistance under the statute.  The *Intel* case arose from a commercial rivalry between Intel Corporation ("Intel Corp.") and its principal competitor, Advanced Micro Devices, Inc. ("AMD"), which initiated an antitrust complaint against Intel Corp. in the European Union.  The member countries of the European Union are bound together pursuant to the European Union Treaty.  The Commission of the European Communities (the "Commission") is a senior executive and administrative body for the European Union, responsible for a wide range of matters.  The Directorate-General for Competition of the Commission (the "Directorate General") operates under the Commission and constitutes the European Union's principal antitrust law enforcer, analogous to the Antitrust Division of the United States Department of Justice.  The Directorate General's "'overriding

Case No.: 1:19-mc-23253-KMW

responsibility is to conduct investigations into alleged violations of the European Union's competition prescriptions." *Intel,* 542 U.S. at 254, 124 S. Ct. at 2477.

As a consequence of AMD's complaint, the Directorate General initiated an *investigation*—i.e., not an adjudicatory proceeding—regarding Intel Corp.'s alleged European Union antitrust violations. In connection with that investigation, AMD—*which was not actually a party to any pertinent litigation or adjudicatory proceeding*—initiated a § 1782 discovery request in the United States to compel Intel Corp. to provide discovery in connection with the Directorate General's ongoing investigation. AMD's § 1782 application was initiated only after *the Directorate General had declined AMD's request that the Directorate General itself initiate a § 1782 application* in the United States to obtain certain documents that Intel Corp. had earlier produced in a United States antitrust lawsuit. *Intel,* 542 U.S. at 251, 124 S. Ct. at 2475. *The EU also expressly opposed the grant of § 1782 "assistance" through amicus curiae briefings in connection with the U.S. Supreme Court proceedings. Id.* at 265 and 2484.

  **C.**  **The *Intel* Opinion Supports the Extension of Discovery Assistance Here**

    **1.**  **Respondents are each a "Person" that May be Compelled to Provide § 1782 Discovery**

Section 1782 authorizes the Court to compel any "person" that "resides" or is "found" in this district to provide discovery. Respondents qualify as a "person" under § 1782 and The Dictionary Act. *See* 1 U.S.C. § 1. The Dictionary Act states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise … the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals …." 1 U.S.C. § 1.

7

Case No.: 1:19-mc-23253-KMW

Respondents in addition "reside" or are "found" in this district, by maintain offices here. The inclusion of the word "found" highlights the exceedingly low standard for satisfying this aspect of § 1782. For example, the Second Circuit Court of Appeals has held that a person may properly be compelled to provide discovery under § 1782 who lives and works abroad, and was served with a subpoena while visiting the United States. *See In re Edelman*, 295 F.3d 171, 179 (2nd Cir. 2002) (Upon noting that the Federal Rules of Civil Procedure enable judges to afford witnesses protection, the court concluded that "when a potential witness comes to the United States it is neither unfair nor inappropriate under the statute to undertake his discovery here."). The Applicant anticipates serving Respondents with a subpoenas in this district upon the issuance of an order by the Court authorizing the discovery assistance here requested.[2]

### 2. The Applicant Satisfies the "Interested Party" Element of § 1782

The Applicant easily qualifies as "interested parties" under § 1782. *Intel* highlights the exceptionally low threshold for satisfying this requirement. "[L]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke §1782 ...." *Intel,* 542 U.S. at 256, 124 S. Ct. at 2478. In holding that AMD was an interested party, the Supreme Court based its conclusion on the fact that in the EU process for which assistance was sought, AMD had certain rights as a "complainant", including the right to: (i) prompt an investigation; (ii) submit information for review by the Directorate General; and (iii) seek judicial review in the event the EU Commission discontinues the investigation or dismisses the complaint. *Id.* at 257-258 and 2478. Here, the Applicant is an actual party to the existing or

---

[2] "'Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents.'" *Weber v. Finker*, 554 F.3d 1379, 1384-1385 (11th Cir. 2009) (quoting *In re Clerici*, 481 F. 3d 1324, 1336 (11th Cir. 2007).

Case No.: 1:19-mc-23253-KMW

immediately anticipated Foreign Proceeding that impact directly the Applicant's substantive economic interests, with respect to which she has substantial legal rights.

### 3. The Foreign Proceedings Satisfy the Foreign "Tribunal" Requirement of § 1782

Section 1782's requirement that the discovery sought be "for use in a proceeding in a foreign or international tribunal" is also here satisfied, since the Foreign Proceedings involve a court proceeding. *Intel* confirms a much lower threshold for satisfying the "foreign or international tribunal" requirement by concluding that the Directorate General, which is merely a governmental investigative body—and not a court or other adjudicatory institution—is a "tribunal" under § 1782 in light of its role in a broader legal process. For example, as a claimant, AMD retained the right ultimately to commence court proceedings to review any discontinuation of the Directorate General's antitrust investigation or refusal to proceed with enforcement action. *Intel,* 542 U.S. at 257, 124 S. Ct. at 2478.

In so holding, the Supreme Court noted that the 1964 amendment to § 1782 replaced the language "any *judicial* proceeding" with the current reference to "a proceeding in a foreign or international *tribunal*." *Intel,* 542 U.S. at 258, 124 S. Ct. at 2479 (emphasis added). This revised language had been proposed by the Commission on International Rules of Judicial Procedure (the "Commission"), which Congress had established in 1958 and directed "to recommend procedural revisions 'for the rendering of assistance to foreign courts *and quasi-judicial agencies.*'" *Id.* The *Intel* opinion in addition quotes a law review article statement by Hans Smit—who was a Columbia University Law School Professor and the head of the Commission—that "'[t]he term 'tribunal' … includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts'." *Id.* (*quoting* Smit, International Litigation Under the

9

Case No.: 1:19-mc-23253-KMW

United States Code, 65 Colum. L. Rev. 1015, 1026-1027, and nn. 71, 73 (1965)). The Commission's recommendations, including the revised "tribunal" language, were adopted unanimously by Congress in 1964. *Intel.*, 542 U.S. at 248, 124 S. Ct. at 2473-2474.[3]

The foreign proceedings also need not even presently be "pending" to satisfy the "foreign or international tribunal" requirement. The *Intel* Court expressly rejected the Second Circuit Court of Appeal's earlier holding—in *In re Ishihari Chemical*, 251 F.3d 120, 125 (2nd Cir. 2001)—that the foreign proceeding for which discovery assistance is sought must either be "pending" or "imminent".[4] "Instead, [the Supreme Court held] that § 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation." *Intel,* 524 U.S. at 259, 124 S. Ct. at 2480. In so holding, the Supreme Court again cited Professor Smit in support of the proposition that "'[i]t is not necessary ... for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.'" *Id.* at 259 and 2480 (*quoting* Smit, International Litigation Under the United States Code, 65 Colum. L. Rev. 1015, 1027 (1965)).[5] Here, the discovery assistance requested is sought to facilitate the Applicant's presently active

---

[3] A variety of foreign legal proceedings have been deemed to satisfy the "tribunal" requirement. *See, e.g., Lancaster Factoring Co., Ltd. v. Magnone,* 90 F. 3d 38 (2nd Cir. 1996) (an Italian bankruptcy proceeding); *In re Application of Chevron Corp.,* 2010 U.S. Dist. Lexis 47034 (S.D. N.Y. 2010) (a UNCITRAL arbitration in Ecuador); *In re Application of Winning (HK) Shipping Co., Ltd.,* 2010 U.S. Dist. LEXIS 54290 (S.D. Fla. 2010) (an anticipated purely private arbitration reviewable under the English Arbitration Act of 1996); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.,* 2009 U.S. Dist. LEXIS 109492 (D. Con. 2009) (a UNCITRAL arbitration in Sweden); and *In re Application of Babcock Borsig AG,* 583 F. Supp.2d 233 (D. Mass. 2008) (an anticipated International Chamber of Commerce arbitration).

[4] The court in *Ishihari Chemical* dismissed an appeal of a denial of a request for § 1782 assistance for being moot. The court's analysis was based upon a determination that the foreign hearing before the Japanese Patent Office (the "JPO") had closed and "that the discovery could not be 'for use in' the current JPO proceeding ...." *Ishihari Chemical,* 251 F. 3d at 126.

[5] Professor Smit headed the Commission created by the U.S. Congress in 1958, whose recommendations were adopted unanimously through the 1964 amendments to § 1782.

10

Case No.: 1:19-mc-23253-KMW

and immediately impending efforts to obtain financial documents necessary in the legal proceeding.[6]

### 4. Section 1782 Does Not Impose a Foreign Discoverability Requirement

Finally, the Court here need not undertake an assessment of the specific discovery procedures that may or may not be available abroad in the Foreign Proceedings. *Intel* resolved a then pending conflict in the Circuit Courts of Appeal[7] by holding that § 1782 does not include a foreign discoverability requirement. *Intel,* 542 U.S. at 253, 124 S. Ct. at 2476.[8] Judicial assistance accordingly may be provided under § 1782 even where the foreign "tribunal" in question would not permit the type of discovery sought in the United States. The Supreme Court also "reject[ed] ... [the] suggestion that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* at 263 and 2482. The Supreme Court explained that § 1782 "does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger." *Id.*[9]

---

[6] Following *Intel,* the Eleventh Circuit Court of Appeals sustained a district court order granting a § 1782 application with respect to a post-judgment discovery request in furtherance of a foreign proceeding. *See Clerici,* 481 F. 3d at 1333. The *Clerici* court reasoned that: (i) "§ 1782 only states that the evidence must be 'for use in a proceeding,' and nothing in the plain language of § 1782 requires that the proceeding be adjudicative in nature"; and (ii) "the Supreme Court has recognized the 'broad range of discovery' authorized under § 1782 is not limited to proceedings that are pending or imminent." *Id.*

[7] "The First and Eleventh Circuits [had] construed § 1782(a) to contain a foreign discoverability requirement. ... The Fourth and Fifth Circuits [had] held that no such requirement exists if the § 1782(a) applicant is a foreign sovereign. ... In alignment with the Ninth Circuit, the Second and Third Circuits [had] rejected a foreign-discoverability requirement...." *Intel,* 542 U.S. at 253, n.7, 124 S. Ct. at 2476, n.7 (citations omitted).

[8] There is also no requirement for an applicant to elicit the documents it seeks in the United States from the foreign tribunal prior to obtaining § 1782 discovery assistance. *See, e.g., Malev Hungarian Airlines v. United Technologies International, Inc.,* 964 F. 2d 97, 100 (2nd Cir. 1992) ("We believe it was improper for the district court to predicate its denial of an application for discovery under 28 U.S.C. § 1782 on the absence of a request for assistance from the Hungarian court."). There is, in addition, no requirement that the documents sought in the United States be admissibly in the proceedings before the foreign tribunal. *See, e.g., John Deere, Ltd. v. Sperry Corp.,* 754 F.2d 132, 137 (3rd Cir. 1985) ("[A] district court is not to predict the admissibility of discovered evidence is foreign tribunals.").

[9] The Second Circuit had reasoned earlier, in *Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1099-1100 (2nd Cir. 1995), that:

### D.      The Court Should Exercise Its Discretion to Grant Foreign Discovery Assistance

#### 1.      *Intel's* Guidance Regarding the Exercise of Discretion

Although the Supreme Court has strongly affirmed § 1782's broad reach, the grant of judicial assistance to foreign proceedings nevertheless remains a discretionary matter. The *Intel* Court expressly declined to adopt supervisory rules regarding § 1782 applications. The Supreme Court instead opted to "await further experience with § 1782(a) applications in the lower courts" and to in the interim merely "note ... factors that bear consideration in ruling on a § 1782(a) request." *Id.* at 264 and 2483.

Those guiding factors for consideration include: (i) whether the party from which discovery is sought in the United States is a participant in the foreign proceedings; and (ii) the nature of the foreign proceedings for which discovery assistance is requested. First, the Supreme Court explained that whether the United States target of the § 1782 discovery was a participant in the foreign litigation was a pertinent consideration because there might be a greater need for assistance in circumstances where the target could not be compelled by the foreign tribunal to produce discovery. Second, the Supreme Court explained that a consideration of the nature of the foreign proceedings might properly involve a consideration of: (i) the character of the proceedings underway abroad, (ii) the receptivity of the foreign government or tribunal to U.S. discovery assistance, and (iii) whether the § 1782 request

---

> We think it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. Although '[a] grant of discovery that trenched upon the *clearly established* procedures of a foreign tribunal would not be within section 1782,' ... we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute.

*Euromepa* is cited favorably in *Intel. See Intel,* 542 U.S. at 262, 124 S. Ct. at 2482.

12

"conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-265, 124 S. Ct. at 2483.[10]

### 2. The Pertinent Circumstances Here Support a Grant of Discovery Assistance

An assessment of the pertinent factors weighs heavily in favor of granting the Applicant's request for discovery assistance here. As is detailed above, *Intel* is an exceptionally strong affirmation of the longstanding public policy underlying § 1782 favoring international discovery assistance. A grant of the Applicant's motion would also be consistent with the limited guidance provided by the *Intel* Court, since Respondents are not a party to or participants in the Foreign Proceeding that might be compelled by the foreign tribunal(s) to provide discovery. The nature of the Foreign Proceeding also does not implicate any factor or policy that would weigh against a grant of the Application. A grant of the assistance requested by the Applicants accordingly would not offend any foreign jurisdiction or constitute a circumvention of foreign proof-gathering rules.

### E. The Court May Monitor Ongoing § 1782 Activity in Accordance With the Federal Rules of Civil Procedure

A grant of the Application would not deprive the Court of its ability to oversee the ensuing § 1782 discovery. Section 1782 contemplates the Court's ongoing supervision of the discovery assistance to be provided by stating that:

---

[10] On example of a court determination that an applicant sought improperly to circumvent the procedures or policies of a foreign tribunal is *In re Application of Microsoft Corp.*, 2006 U.S. Dist. LEXIS 32577 (D. Mass. 2006), where Microsoft sought U.S. discovery assistance in support of a European Union Commission antitrust proceeding investigating Microsoft's business practices. The Court declined the request where the foreign "tribunal"—i.e., the European Union Commission—intervened in the U.S. § 1782 proceedings and advised the district court that "'permitting the discovery requested by Microsoft would contravene principles of international comity since, in this case, the Commission is *not* receptive to the judicial assistance sought by Microsoft pursuant to 28 U.S.C. § 1782 and, indeed, believes that enforcement of Microsoft's subpoena would pose a serious risk that the Commission's rules and procedures concerning competition law enforcement would be circumvented.'" *Id.* at * 7 (*quoting* Memorandum of the Commission of the European Union in Support of Novel, Inc.'s Motion to Quash).

Case No.: 1:19-mc-23253-KMW

> The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The Court accordingly retains its ability to manage discovery issues through Federal Rule of Civil Procedure 26 (and otherwise). *See, e.g., Edelman,* 295 F.3d at 178-179 (although § 1782 could be used to justify service of a subpoena upon a person who resides and works abroad, while merely visiting the United States, the court retained the ability to minimize any undue burden on the witness by applying the 100-mile rule in Federal Rule of Civil Procedure 45(c)(3)(A)(ii) and by issuing protective orders pursuant to Rule 26(c)).[11]

---

[11] Another example of a court's ongoing oversight of § 1782 discovery is *United Kingdom v. United States,* 238 F.3d 1312 (11th Cir. 2001), which involved a request for discovery by a British court overseeing a criminal matter in which the defendants had requested that the British court issue a request for the production of "certain sensitive law enforcement documents possessed by the United States, including grand jury materials, work product, and wiretap information, all of which [allegedly] were relevant to [the] defense of [the] criminal prosecution in England." *Id. at* 1314. The district court's exercise of discretion in managing competing interests to allow some of the discovery requested and to permit other materials to be protected on the grounds of privilege was deemed to be appropriate and upheld on appeal. Id. at 1324 ("To summarize, the scope of our review in this appeal is limited and deferential. The district court gave the required respect to the English court's order and important considerations of comity underlying § 1782, but recognized that competing domestic law enforcement and privacy concerns articulated by the Government [(of the United States)] justified withholding some (but not all) of the items in question.").

Case No.: 1:19-mc-23253-KMW

### IV. Conclusion

In light of the foregoing, the Applicants respectfully request that their Application be granted.

**Date: August 14, 2019**   Respectfully submitted,

By: /s/ ***Gustavo J. Lamelas***
Gustavo J. Lamelas (Fla. Bar No. 995983)
Email: gus@lamelaslaw.com
Daniel Buigas (Fla. Bar. No. 98293)
Email: daniel@lamelaslaw.com
**Lamelas Law, PA**
2525 Ponce de Leon Blvd., Ste. 300
Coral Gables, Florida 33134
Telephone: (305) 395-4010
**Counsel for Applicant**

Case No.: 1:19-mc-23253-KMW

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by U.S. mail, on **August 14, 2019,** on all persons identified on the Service List below.

By: /s/ *Daniel Buigas*

## Service List

**Banesco USA**
c/o Entity Registered Agent LLC
Juan E. Serralles
201 S. Biscayne Blvd., Ste. 2600
Miami, Florida 33131

**SunTrust Bank**
Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301

**SunTrust Banks, Inc.**
Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301

**Miura Investment Advisors, Inc.**
Somerset Corporate Services, Inc.
1 Alhambra Plaza
Suite 140
Coral Gables, Florida 33134

**Italo D'Alfonso**
1110 Brickell Avenue, Ste. 515
Miami, Florida 33131

**Mario V. D'Alfonso**
1110 Brickell Avenue, Ste. 515
Miami, Florida 33131

**Hugo Ortega**
1110 Brickell Avenue, Ste. 515
Miami, Florida 33131

**Mario Ovalles**
1110 Brickell Avenue, Ste. 515
Miami, Florida 33131